United States Courts
Southern District of Texas
FILED

MAR 2 7 2026

Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

---

ERICK SCOTT BLACKWOOD-HEAD, a/k/a ERICK SCOTT HEAD,

      Plaintiff,

v.

ERIC HEAD; KIMBERLY FOWLER HEAD; TRELLIS FOUNDATION; H-E-B GROCERY COMPANY, L.P.; BILL & MELINDA GATES FOUNDATION; EXXONMOBIL CORPORATION; and LINDA WALKER,

      Defendants.

---

*Civil Action No.* _____

---

**AFFIDAVIT OF ERICK SCOTT BLACKWOOD-HEAD
IN SUPPORT OF COMPLAINT FOR PEONAGE, FORCED LABOR,
AND CIVIL REMEDY UNDER 18 U.S.C. §§ 1581, 1589, 1590, 1595**

*Documenting: Retaliatory Housing Termination; Coded Intimidation
Pattern at The Purple Door; and Witness Intimidation
Following Filing Activity of March 25, 2026*

---

## I. DECLARATION UNDER PENALTY OF PERJURY

I, Erick Scott Blackwood-Head, a/k/a Erick Scott Head, being of sound mind and competent to testify to the matters set forth herein, hereby declare and state as follows under penalty of perjury pursuant to **28 U.S.C. § 1746**. All facts stated herein are within my personal knowledge unless otherwise indicated.

## II. IDENTITY AND CURRENT CIRCUMSTANCES

1. I am the Plaintiff in the above-captioned action and in related Civil Action Nos. 4:25-cv-00703 and 2:25-CV-00121, pending in the Southern District of Texas. I am a former licensed vocational nurse, journalist, musician, and environmental activist currently proceeding pro se and in forma pauperis.

2. I am currently residing at **The Purple Door Domestic Violence Shelter, Corpus Christi, Texas**. My sole source of income as of the date of this affidavit is plasma donation proceeds through CSL Plasma, disbursed via a Paysign prepaid Visa card. My available balance as of March 25, 2026 is $23.50, following the expenditures documented herein.

3. Defendant **Linda Walker** serves as Chair of the board of directors of The Purple Door. Defendant **ExxonMobil Corporation** is documented as the corporate beneficiary of the DCI Group/Fox Hunt hacking and disinformation operation targeting Plaintiff's activist community. Walker's governance role at The Purple Door is alleged in the Complaint (¶¶ 10, 36, 57) as constituting the "White Knight Strategy" documented in *Steiner v. eBay Inc.*, No. 1:21-cv-11181 (D. Mass., settled February 25, 2026).

## III. THE FILING EVENT OF MARCH 25, 2026 — DOCUMENTARY RECORD

4. On **March 25, 2026, at approximately 1:45 p.m.**, I traveled to **Office Depot Store #468, Corpus Christi, Texas**, and purchased printed copies of the Complaint in this action at a cost

of **$25.00**, for the purpose of filing with this Court. This transaction is documented in my Paysign card transaction history, a screenshot of which is attached hereto as **Exhibit A**.

5. The Complaint printed on March 25, 2026 names ExxonMobil Corporation and Linda Walker as Defendants and directly alleges that Walker's governance role at The Purple Door constitutes knowing participation in the trafficking venture while in a position of institutional authority over Plaintiff's communications and disclosures.

## IV. RETALIATORY HOUSING TERMINATION — SAME DAY AS FILING

6. Upon returning to The Purple Door on the afternoon of March 25, 2026, I was informed by **staff member EJ Rodriguez** that I had been assigned an **exit date of Friday, March 27, 2026** — two days from notification. Prior to that date I had received no written notice, no documented rule violation, no grievance proceeding, and no stated policy basis for the housing termination.

7. I requested an extension of one week. Rodriguez stated he would ask the director. Rodriguez subsequently returned and informed me that **the director insisted on Friday, March 27, 2026**. No extension was granted and no written basis was provided.

8. The sequence — print complaint naming Purple Door board Chair as Defendant → return to shelter → receive exit date from director, same afternoon — establishes a direct causal nexus between my protected filing activity and the retaliatory housing deprivation. Under *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019), a housing provider's failure to act on — or active participation in suppressing — known indicators of trafficking can satisfy the "participation in a venture" standard of 18 U.S.C. § 1595, even without evidence of formal criminal conspiracy. The same-day termination following a filing that named the board Chair constitutes active participation, not mere inaction.

9.   Loss of shelter residency on March 27, 2026 will: (a) eliminate my only stable mailing address for court correspondence; (b) disrupt my ability to file and respond in this and related actions; (c) eliminate access to power and internet necessary for pro se litigation; and (d) constitute continuation of the economic strangulation campaign alleged in the Complaint — reducing me to homelessness on the date following the filing of a complaint against the institutional actors responsible for that campaign.

## V.  PATTERN OF CODED INTIMIDATION AT THE PURPLE DOOR — KNOWLEDGE OF VENTURE

The following paragraphs set forth, under oath, specific statements I personally heard at The Purple Door from staff members and residents during my residency.  I record these statements as factual observations.  I also set forth my interpretation of these statements and the legal basis for that interpretation.  As the First Circuit held in *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017), circumstantial statements and conduct are to be *"read as a whole"* and courts must not treat individual observations as "meaningless in isolation" when the surrounding pattern supports an inference of venture knowledge.  The statements documented below, read in the context of the broader pattern alleged in the Complaint, support the inference that staff and affiliated individuals at The Purple Door had knowledge of the trafficking venture and communicated that knowledge through coded language.

10.  **Ricchio v. McLean Parallel.**  In *Ricchio*, the First Circuit reversed dismissal of § 1595 claims against a motel operator based in part on a motel owner's exchange of high-fives with the trafficker while speaking about "getting this thing going again" — in plain view of the victim's visible deterioration.  The Court held this gesture, read in context, was sufficient to support an inference of knowing venture participation.  853 F.3d at 557.  The coded statements documented below occupy an analogous evidentiary position: individually

susceptible to innocent explanation, but collectively — read in the context of the documented venture, my known advocacy activities, and the same-day housing termination — sufficient to support an inference of knowledge and coordination.

11. **Statements Referencing Plaintiff's Musical Identity.** On multiple occasions during my residency at The Purple Door, staff members and residents made statements referencing **"Papa"** in contexts and tones that I recognized as references to my musical identity and catalog. I am known in my musical work under identifiers that include this term. These references were made in circumstances — tone, context, proximity to other coded statements — that I did not understand as coincidental or generic. I am prepared to provide specific dates, times, and the identity of the individuals who made these statements upon the Court's request, in camera if necessary to protect individuals who may face retaliation.

12. **"Los'd Stays Slashed" — Staff Statement, March 24, 2026.** On **March 24, 2026,** I personally heard a staff member state: *"Los'd stays slashed."* In hip-hop and street vernacular, "Los" is a widely recognized reference to the rapper King Los, and "slashed" is colloquial for being cut off, excluded, or eliminated from participation — financially, professionally, or physically. The compound statement — rendered in the possessive form of a known artist's name followed by a slang term for exclusion — was, in my assessment, a coded communication about my status within the network targeting me, delivered in a setting where a direct statement would be inappropriate or incriminating. The statement was made the day before I printed the Complaint and was assigned an exit date.

13. **Multiple Statements Regarding Being "Slashed," "Hushed," and "Shucked."** During my residency at The Purple Door, I personally heard on multiple occasions — from both staff members and residents — statements using the terms **"slashed," "hushed,"** and **"shucked."**

In the vernacular contexts in which I heard them used, each of these terms carries a consistent meaning: to be cut off, silenced, isolated, or removed from economic and social participation. These terms are consistent with the peonage mechanism alleged in the Complaint — the use of debt, threat, social isolation, and professional destruction to maintain a person in a condition of economic dependency and submission. The terms were used in proximity to references to my identity, activities, and legal situation.

14. **Interpretation and Legal Significance.** I interpret these statements — individually and as a pattern — as coded communications among individuals with knowledge of the trafficking venture, designed to: (a) signal to me that my exclusion and isolation were known, intentional, and ongoing; (b) communicate the venture's objectives to other residents in a manner deniable as innocent slang; and (c) reinforce the psychological coercion component of the forced labor scheme by making clear that those around me were participants in or aware of the effort to isolate me. This is consistent with documented gang and trafficking operation communication methods, in which coded language is used to coordinate activity and signal status in environments — including shelter environments — where direct communication would be observable and incriminating. I do not assert this interpretation as established fact; I assert it as the reasonable inference I drew from the totality of circumstances, which I am setting forth under oath for the Court's assessment.

15. **Connection to Complaint Allegations.** The Complaint alleges that the trafficking venture operated with the specific objectives of: preventing Plaintiff from pursuing journalism, organizing, nursing, and musical endeavors (Complaint ¶¶ 19–20, 35); maintaining Plaintiff in a condition of economic dependency and professional isolation (Complaint  19(f)); and using institutional settings — including The Purple Door — as intelligence-gathering and

suppression mechanisms (Complaint ¶¶ 10, 36, 57). The statements documented above are consistent with venture participants having knowledge of these objectives and communicating that knowledge in a coded manner.

| Statement / Observation | Date | Source | Vernacular Meaning | Venture Relevance |
|---|---|---|---|---|
| "Papa" references | Multiple dates | Staff and residents | Reference to Plaintiff's musical identity | Knowledge of Plaintiff's identity and targeting of artistic work |
| "Los'd stays slashed" | March 24, 2026 | Staff member | "Cut off / excluded" (ref. rapper King Los) | Coded statement re: Plaintiff's exclusion, day before exit date assigned |
| "Slashed" (multiple) | Multiple dates | Staff and residents | Excluded, cut off financially/professionally | Consistent with peonage mechanism: isolation of income and profession |
| "Hushed" | Multiple dates | Staff and residents | Silenced, suppressed from speaking | Consistent with suppression of Plaintiff's journalism and legal activity |
| "Shucked" | Multiple dates | Staff and residents | Stripped, removed, dispossessed | Consistent with credential revocation, housing deprivation, asset removal |

## VI.  INTIMIDATION OF THIRD-PARTY WITNESS — WITHIN 24 HOURS OF DISCLOSURE

16.  On or about March 24, 2026, I disclosed to a fellow resident of The Purple Door — identified herein as "Resident A" for his protection — information concerning my case, including documentary evidence from the compiled record of surveillance, financial coordination, and institutional targeting documented in this litigation.

17.  Within **less than 24 hours** of that disclosure, I obtained a **photograph of a text message** constituting a threat directed at **Resident A's mother**. This photograph is attached hereto as **Exhibit B**. The timing — disclosure of case materials followed within 24 hours by a threat to the disclosee's family member — is consistent with third-party witness intimidation used

to achieve leverage over a witness without directly threatening the witness in a manner immediately reportable to law enforcement.

18. This pattern is consistent with the venture architecture documented in *United States v. Baugh et al.* (D. Mass.) — the eBay corporate stalking case — in which third parties connected to targets were specifically selected for intimidation. I am prepared to identify Resident A to the Court in camera and to produce Exhibit B upon the Court's order.

## VII. LEGAL FRAMEWORK — VENTURE PARTICIPATION

19. *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017). The First Circuit held that a housing provider's knowledge of trafficking combined with continued material benefit from the venture — established through circumstantial conduct including a high-five exchange and statements about "getting this thing going again" — was sufficient to plead § 1595 venture participation at the motion-to-dismiss stage. The Court expressly directed that individual pieces of conduct not be treated as "meaningless in isolation" but be read in the context of the complaint as a whole. *Id.* at 557. The coded statements documented in Section V above, read in the context of the entire Complaint and this Affidavit, are subject to the same analytical framework.

20. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019). A housing provider's failure to act on known indicators of trafficking — even without direct participation in the trafficking acts — can satisfy the § 1595 "participation in a venture" standard. The Purple Door's governance structure, which placed Defendant Walker in the Chair position providing actual institutional access to Plaintiff's disclosures, combined with the same-day retaliatory exit date following the filing of a complaint naming Walker as a Defendant, satisfies this standard.

21. **Ongoing Venture.** The events of March 25, 2026 — retaliatory housing termination, coded intimidation pattern, and witness intimidation — are not isolated incidents. They are the most recent episodes in a continuous pattern that includes: the July 10, 2024 false arrest; the October 2024 peonage demand and assault; the December 2024 false sex-offender registry listing; the May 2025 food-access denial; the August 2025 nursing license revocation; and the March 2025 fraudulent foreign summons. **Each escalation follows a protected disclosure or filing. The pattern is the evidence.**

## VIII. RELIEF REQUESTED

Based on the foregoing, Declarant respectfully requests that the Court:

1. Issue a temporary restraining order or emergency injunction pursuant to Fed. R. Civ. P. 65 restraining The Purple Door DV shelter and all persons acting in concert with Defendants from evicting Plaintiff pending resolution of this action;

2. Order immediate preservation of: (a) all shelter records concerning Plaintiff's residency and exit-date determination; (b) all communications between staff member EJ Rodriguez, the shelter director, and any board member including Linda Walker from March 24–27, 2026; and (c) all records concerning individuals referenced in Sections V and VI of this Affidavit;

3. Order that Defendant Linda Walker and ExxonMobil Corporation show cause why they should not be held in contempt for conduct advancing the trafficking venture on the date this Complaint was filed; and

4. Grant such other and further emergency relief as the Court deems just and proper to prevent continuation of the retaliatory campaign documented herein.

## IX.  VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. *28 U.S.C. § 1746.*

Executed on March 25, 2026, in Corpus Christi, Texas.

_____

Erick Scott Blackwood-Head, a/k/a Erick Scott Head

Pro Se Plaintiff

2202 Nodding Pines Dr., Apt. 232

Corpus Christi, Texas 78414

(361) 463-9030 | kirect1@gmail.com

## EXHIBIT INDEX

| Exhibit | Description | Purpose |
|---------|-------------|---------|
| A | Paysign app screenshot, March 25, 2026, 6:42 p.m. — Office Depot #468 transaction ($25.00, 1:45 p.m.); account balance $23.50 | Corroborates date, time, and purpose of filing activity |

| B | Photograph of text message threatening Resident A's mother, received within 24 hours of Plaintiff's case disclosure to Resident A | Documents third-party witness intimidation following disclosure of case materials |
|---|---|---|

**— END OF AFFIDAVIT —**



6:42

**Paysign CSL Plasma|Visa® Prepaid Card**

**⋄ paysign**

# $23.50

AVAILABLE BALANCE AS OF

Mar 25, 2026

ACCOUNT STATUS

Active

View Statements                                    〉

**Transactions**                    Details

---

PENDING POS PURCHASE

OFFICE DEPOT #468 CORPUS CHRIST TX US

03/25/2026 | 1:45 pm                              −$25.00

PENDING POS PURCHASE

USPS PO 4820200410 CORPUS CHRIST TX US

03/25/2026 | 10:27 am                            −$9.14

DONATION LOAD

03/24/2026 | 5:16 pm                             $70.00

PIN POS PURCHASE

4821 AYRES ST    US CORPUS CHRIST TX US

03/24/2026 | 4:25 pm                             −$12.61



**Office Depot Release code FE388FF2 is ready for printing**

1 message

**PrintMe** <no-reply@printme.com>                                    Wed, Mar 25, 2026 at 12:21 PI
To: kirect1@gmail.com

Thank you for your document submission to Office Depot. Your document(s) are now available for printing at any Office Depot or OfficeMax store.

To retrieve and print your document(s):

      1. Go to a self-serve copier or see a Print & Copy associate
      2. Select Print from Email
      3. Enter Release code below
      4. Follow the simple on-screen instructions

Release code: **FE388FF2**
Release code will expire in 24 hours. List of document(s):
IFP_Marshal_1595_Blackwood-Head-1.PDF
Exhibits_1595_Blackwood-Head.PDF
Complaint_1595_Blackwood-Head-3.PDF
Mail body:

For your security, your document(s) will only be available for 24 hours from the time of submission.


Thank you for your business,
Your Office Depot Print & Copy Team